# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LORI J. BLAIR,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-1064

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Lori J. Blair brings this action pursuant to 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security ("Commissioner") denying her

application for disability insurance benefits ("DIB"). This matter is before the Court on

plaintiff's statement of errors (Doc. 6), the Commissioner's response in opposition (Doc. 13),

and plaintiff's reply memorandum (Doc. 14).

## I. Procedural Background

In December 2008, plaintiff filed an application for DIB, alleging disability since June

2008 with a last insured date of December 31, 2005 due to a back impairment. (Tr. 184-87).

Because plaintiff's alleged onset date occurred after her date last insured, the state agency denied

her claim on technical grounds for lack of insured status and made no medical determination.

(Tr. 15, 28). Plaintiff filed a request for hearing in February 2009 and amended her alleged onset

date to March 1, 2003.[1] After a hearing held before administrative law judge ("ALJ") Samuel A.

Rodner, the ALJ issued a decision denying plaintiff's DIB application on May 27, 2011. (Tr. 32-

43). The Appeals Council denied plaintiff's request for review on December 5, 2011.

Plaintiff then filed a civil action with the Court on January 20, 2012. (Case No. 1:12-cv-

54). The parties filed a joint motion to remand to the Appeals Council, which the District Court

---

[1] Plaintiff later amended her alleged onset date to July 21, 2003. (Tr. 15).

granted on July 26, 2012. (Tr. 74-75). On remand, the Appeals Council vacated ALJ Rodner's

May 27, 2011 and remanded the case back to an ALJ for further proceedings consistent with the

order of the Court. (Tr. 49). The Appeals Council order from October 16, 2012 states as

follows:

> At the hearing level the claimant revised her alleged onset of disability to
> March 1, 2003 (e.g., tr. 82, 105). However, because there had been no State
> agency determination on whether the claimant was disabled, under 20 CFR
> 404.946(b)(1) the new allegation of onset of disability was an issue that "may not
> be raised" in connection with a request for a hearing. HALLEX I-2-2-10 carves
> out an exception, but only where the evidence permits a decision that is wholly
> favorable on the issue of disability.
>
> On remand, the Administrative Law Judge will consider whether, perhaps
> based on new evidence, there is a basis for issuing a wholly favorable decision
> that the claimant has been disabled since March 1, 2003. If the evidence does not
> call for a wholly favorable decision, the claimant's request for a hearing should be
> dismissed under 20 CFR 957(c)(2) so that the claimant's case can be returned to
> the State agency for the initial determination [s]he has not yet had on whether
> [s]he was disabled since March 1, 2003.

(Tr. 49-50).

On remand to the ALJ, the case was then assigned to ALJ Larry Temin. ALJ Temin was

unable to issue a wholly favorable decision and dismissed plaintiff's request for a hearing

pursuant to 20 C.F.R. § 404.957(c)(2) and returned the case to the state agency for medical-

vocational determinations. (Tr. 54-55). While at the state agency, the case file for this matter

was lost and had to be reconstructed. (Tr. 16). The state agency determined in 2015 that

plaintiff could have performed her past relevant work as of December 31, 2005, her date last

insured. (Tr. 16).[2]

A new hearing was held before ALJ Peter J. Boylan on September 15, 2015 and the ALJ

reissued a decision denying plaintiff's DIB application. (Tr. 15-27). Plaintiff's request for

---

[2] The ALJ's decision notes that the state agency's determination was recovered upon "[a] review of the
Administration's computer system." (Tr. 16).

review by the Appeals Council was denied, making the ALJ's decision the final administrative decision of the Commissioner. (Tr. 7-9). Plaintiff then filed an appeal with this Court on November 9, 2016. (Doc. 1).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2005.

2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of July 21, 2003, through her date last insured of December 31, 2005. (20 CFR 404.1571, *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: degenerative disc disease, post-laminectomy syndrome, and right carpal tunnel syndrome. (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured of December 31, 2005, the [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: she could have frequently climbed ramps and stairs, but was unable to climb ladders, ropes, or scaffolds. She could have stooped, knelt, crouched, or crawled occasionally. She must have avoided concentrated exposure to extreme cold, extreme heat, humidity, vibration, and work place hazards such as dangerous machinery and unprotected heights.

6. Through the date last insured, the [plaintiff] was capable of performing past relevant work as a telephone representative, a data entry clerk, and a billing clerk. This work did not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity. (20 CFR 404.1565).

7. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from July 21, 2003, the alleged onset date, through December 31, 2005, the date last insured (20 CFR 404.1520(f)).

(Tr. 18-26).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The decision of ALJ Boylan is the relevant decision on appeal. Plaintiff argues ALJ

Boylan erred: (1) by failing to give proper weight to the opinion of Dr. Richard Hutson, the

medical expert who testified at a previous hearing; (2) by assessing plaintiff's residual functional

capacity; (3) in his credibility analysis of plaintiff's testimony; and (4) by asking the vocational

expert improper hypothetical questions. (*Id.* at 7-13).[3]

### 1. Substantial evidence supports the weight given to Dr. Hutson

Plaintiff argues that the ALJ erred in failing to give Dr. Hutson the "most weight" under

Social Security Ruling 96-2p. (Doc. 6 at 9). Plaintiff contends that Dr. Hutson is an experienced

medical expert who has given testimony for many years and is familiar with the Commissioner's

Listings and Regulations. (*Id.*). Plaintiff asserts Dr. Hutson cited to objective medical evidence

to support his 2010 testimony before ALJ Rodner, including plaintiff's scar tissue, MRI findings,

---

[3] Plaintiff also states that after ALJ Temin remanded the case back to the Ohio state agency for medical-vocational determinations, the agency did not conduct the determinations and "instead erroneously [thought] that Ms. Blair did not have enough quarters of disability coverage, [and failed] to note that she had amended her onset date of disability to July, 2003 when she was insured (Tr. 90-92)!" (Doc. 6 at 5). She further asserts that the procedure on remand "resulted in no substantive change in her medical impairments" and that there is still no medical opinion from a state agency doctor under Social Security Rulings 96-5p and 96-6p. (*Id.* at 6). The Court declines to consider these arguments that appear to be unconnected to plaintiff's four asserted specific errors. Nor does plaintiff explain how these alleged procedural issues constitute reversible error. The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan*, 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing recent decisions that stand for these two related propositions)). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). As plaintiff has failed to direct the Court's attention to any legal authority in support of these arguments, the Court finds plaintiff has waived such arguments.

and the side-effects of plaintiff's medications. (*Id.*). Plaintiff also maintains that the ALJ did not discuss or weigh Dr. Hutson's specific testimony. (*Id.*). Plaintiff contends that in stating the objective medical findings for plaintiff's work-related limitations and for his opinion that her medical impairments equaled Listing 1.04A, Dr. Hutson "thoroughly reviewed the file," contrary to the ALJ's finding. (*Id.*).

The ALJ gave "little weight" to the assessment of Dr. Hutson, the impartial medical expert who testified at the December 2010 hearing prior to the remand. (Tr. 24). The ALJ explained that Dr. Hutson testified that there was no connection between the plaintiff's pain and the MRIs of record, which was "out of the mainstream." (*Id.*). The ALJ also gave little weight to Dr. Hutson's opinion that the severity of plaintiff's back disorder equaled the criteria of Listing 1.04A. The ALJ explained that "[n]ot only did Dr. Hutson refuse to state the objective medical evidence on which he based his opinion, he based his decision solely on the [plaintiff's] subjective complaints." (*Id.*). In addition, when ALJ Rodner asked Dr. Hutson to explain the degree to which plaintiff's subjective complaints were consistent or inconsistent with the objective evidence, Dr. Hutson refused and instead stated "I am the doctor." (*Id.*). The ALJ also explained that Dr. Hutson did not prove at the hearing that plaintiff's prescribed pain medication could cause severe side effects. (*Id.*). The ALJ reasoned that he gave little weight to Dr. Hutson's testimony because "Dr. Huston's [sic] refusal to fully explain the consistency or inconsistency of the [plaintiff's] allegations violates his responsibilities as a medical expert." (*Id.*). Further, the ALJ suggested that Dr. Hutson "did not thoroughly read the medical file." (*Id.*).

An ALJ must consider all medical opinions provided in the record. 20 C.F.R. §

404.1527(c)[4]. Under the treating physician rule, an ALJ must give "controlling" weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R § 404.1527(c)(2). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(c)(3). Medical expert testimony consistent with the evidence of record can constitute substantial evidence to support the Commissioner's decision. *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989). The purpose of a medical expert is to advise the ALJ on medical issues and answer specific questions about the plaintiff's impairments, the medical evidence, the application of the listings, and functional limitations based on the plaintiff's testimony and the record. *Gray v. Comm'r of Soc. Sec.*, No. 1:14-cv-283, 2015 WL 1469115, at *7 (S.D. Ohio Mar. 30, 2015) (*citing* 20 C.F.R. § 404.1527(e)(2)), *report and recommendation adopted*, 2015 WL 1913100 (S.D. Ohio Apr. 27, 2015).

Substantial evidence supports the ALJ's determination that Dr. Hutson's testimony was entitled to "little weight." As a medical expert who had no treating or examining relationship with plaintiff, Dr. Hutson qualifies as a non-examining source under the regulations and his testimony is therefore not entitled to "controlling weight." As such, the ALJ did not violate the treating physician rule by failing to give "controlling weight" to the testimony of Dr. Hutson.

---

[4] Effective March 27, 2017, the regulations were amended and 20 C.F.R. § 404.1527 is now superseded by 20 C.F.R. § 404.1520c.

Plaintiff suggests that the ALJ thereby failed to comply with Social Security Ruling 96-2p (Doc. 6 at 9), which is a policy interpretation on "Giving Controlling Weight to Treating Source Medical Opinions." *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996). However, plaintiff has failed to explain how SSR 96-2p applies in this case given that she challenges the ALJ's weighing of *non-treating* physician's testimony.

In determining the appropriate weight to afford Dr. Hutson's opinion, the ALJ was only required to consider the degree to which Dr. Hutson provided supporting explanations for his opinion and the degree to which Dr. Hutson considered the pertinent evidence of record. 20 C.F.R. § 404.1527(c)(3). Here, the ALJ reasonably determined that Dr. Hutson's opinion was entitled to little weight and contrary to plaintiff's assertion in connection with her second assignment of error, the ALJ thoroughly discussed the reasons why Dr. Hutson's opinion was entitled to "little weight." At the 2010 hearing before ALJ Rodner, Dr. Hutson opined that plaintiff's medical impairments equaled Listing 1.04A. However, when ALJ Rodner questioned Dr. Hutson regarding that listing determination, Dr. Hutson believed that plaintiff's loss of neurological function equaled the listing, but he could not point to any objective medical evidence in the record showing neurological dysfunction. (Tr. 150). Further, Dr. Hutson testified that there was no correlation between plaintiff's pain and the laboratory findings in the record. (Tr. 151).

Dr. Hutson also testified that while he could not provide an opinion on whether plaintiff could have worked eight hours a day before December 2005, her date last insured, she could have worked with a "sit/stand option," depending on her pain. (Tr. 152). In addition, Dr. Hutson opined that plaintiff could perform postural tasks on an occasional basis, but needed to avoid ladders and heights, and concentrated exposure to cold, heat, wetness, humidity, and vibration,

all of which was consistent with the ALJ's RFC determination. (Tr. 153). Further, when

questioned by the ALJ regarding an examination conducted by Dr. Portugal, a rehab physician,

Dr. Hutson opined that objectively, the examination revealed that plaintiff "was intact,

essentially normal." (Tr. 171) (citing Tr. 641). Nonetheless, the ALJ did consider Dr. Hutson's

testimony, contrary to plaintiff's assertion. In pointing out many of the above contradictions

from Dr. Hutson's testimony, the ALJ did not err in finding that his testimony was entitled to

"little weight." Accordingly, plaintiff's first assignment of error should be overruled.

### 2. Substantial evidence supports the ALJ's RFC determination.

Plaintiff contends that the ALJ erred in determining her residual functional capacity.

Citing to Social Security Ruling 96-8p, plaintiff argues that the ALJ is required to give a

"function by function" assessment of plaintiff's RFC and to discuss the weight given to doctors

in the record. (*Id.* at 7). Plaintiff contends that in giving little weight to a statement from Dr.

Thomas Saul and little weight to Dr. Hutson's testimony before ALJ Rodner in 2010, ALJ

Boylan failed to explain which opinion received the "most weight" in his sedentary RFC

determination. (*Id.*). Plaintiff explains that Dr. Hutson concluded that plaintiff's impairments

equaled Listing 1.04A. According to plaintiff, Dr. Hutson testified to the instability of her lower

back following her 2003 laminectomy surgery, defects from the laminectomy and resulting scar

tissue shown on an MRI study, her use of Fentanyl and Vicodin for pain, her irritated nerve

roots, and the side effects she suffered from strong medications. (*Id.* at 7-8). Plaintiff contends

that ALJ Boylan also erred in failing to adopt Dr. Hutson's RFC, as it was the only RFC

evaluation on the record. (*Id.* at 8).

ALJ Boylan evaluated the medical evidence prior to the date last insured, including the

medical source opinions, and found that the evidence "did not support allegations of disabling

impairments prior to the date last insured of December 31, 2005." (Tr. 21). The ALJ gave

sufficient reasons for determining plaintiff's RFC as required by Social Security Ruling 96-8p.

Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion

from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-

8p, 1996 WL 374184, at *7 (July 2, 1996). The Ruling also requires the ALJ to "assess [the

claimant's] work-related abilities on a function-by-function basis." *Id.* at *1. However, the

Ruling does not require ALJ's decision to include a function-by-function discussion of each

work-related activity in the RFC. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th

Cir. 2002) ("[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require

ALJs to produce such a detailed statement in writing") (quoting *Bencivengo v. Comm'r of Soc.*

*Sec.*, No. 00–1995, 2000 WL 1929759 (3d Cir. Dec. 19, 2000)). The ALJ must only show "how

the evidence supported the RFC determination, discuss the individual's ability to perform work-

related activities, and explain the resolution of any inconsistencies in the record." *Wolte-*

*Rotondo v. Comm'r of Soc. Sec.*, No. 15-13093, 2016 WL 4087232, at *1 (E.D. Mich. August, 2,

2016) (citing *Delgado*, 30 F. App'x at 548).

Here, ALJ Boylan gave a thorough explanation of the medical evidence, citing to several

examinations by plaintiff's physicians and several x-rays, CT scans, and MRI scans from

plaintiff's alleged onset date of July 21, 2003 through December 31, 2005, her date last insured.

(Tr. 20-24). Before her surgery in October 2003, the medical evidence shows that plaintiff's

stance, station, and gait were normal. (Tr. 663-64). She could walk without difficulty and had

normal coordination, balance, and muscle strength. (*Id.*). A lumbar x-ray and lumbar

myelogram showed no acute bony abnormalities of the lumbar spine, and mild diskopathy and

mild to moderate arthrosis. (Tr. 708-09). After the decompressive lumbar laminectomy and

discectomy surgeries on October 28, 2003, the medical evidence from subsequent examinations and procedures shows that plaintiff's condition remained normal. (Tr. 746-47). Dr. Saul observed that plaintiff's stance, station, and gait were still normal. (Tr. 648). Plaintiff could still walk without difficulty and had normal coordination, balance, and range of motion in both arms and legs. (*Id.*). A post-operation lumbar MRI also revealed minimal disc protrusion, mild grade 1 degenerative spondylolisthesis, and no recurrent disc herniation. (Tr. 644). Dr. Portugal noted in March 2004 that plaintiff had normal muscle tone and strength and a good toe and heel walk. Dr. Portugal also noted that plaintiff could engage in sitting straight leg raises 90 degrees bilaterally and had no radiating pain. (Tr. 737). Another examination conducted in May 2005 showed that plaintiff had a good range of motion of her cervical spine and good, but limited lumbar flexion. (Tr. 627-28). Plaintiff also had good range of motion in her shoulders, elbows, wrists, hands, and the joints of both lower extremities. (*Id.*). Considering the above medical evidence, ALJ Boylan completed a detailed review to support his RFC determination.

In addition, contrary to plaintiff's assertion, the ALJ adequately explained the weight given to Dr. Hutson and Dr. Saul in computing plaintiff's RFC. Under 20 C.F.R. § 404.1527(c)(2), an ALJ "must give good reasons in [his or her] notice of determination or decision for the weight [given] to [the plaintiff's] treating source's medical opinion."[5] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p,

---

[5] Effective March 27, 2017, the regulations were amended and 20 C.F.R. § 404.1527(c)(2) is now superseded by 20 C.F.R. § 404.1520c. Because the ALJ made his determination in 2015 before the new regulations were in effect, the Court must apply the regulations that existed at the time of the decision. *See Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

1996 WL 374188 at *5 (July 2, 1996). *See also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (An ALJ's reasoning must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). However, the ALJ is "not required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010).

With regard to Dr. Saul, whom the ALJ considered to be plaintiff's treating physician and thus subject to the requirements of 20 C.F.R. § 404.1527(c)(2), the ALJ thoroughly discussed his opinion and gave good reasons why Dr. Saul's opinion from March 2004 was entitled to little weight. The March 2004 assessment by Dr. Saul placed plaintiff on "temporary disability." (Tr. 647). Dr. Saul opined that plaintiff's myelogram/CT scan turned out to be "really unremarkable" and the findings were "minimal." (*Id.*). Dr. Saul further opined that he was "reluctant to declare any disability" and did not believe that the findings from the myelogram/CT scan were significant enough to cause significant disability and symptoms. (*Id.*). Dr. Saul hoped that much of plaintiff's discomfort came from her muscle and ligaments. Further, the ALJ considered three other examinations by Dr. Saul, two of which showed that plaintiff could walk without difficulty, and had normal coordination, balance, and range of motion in her thoracic and lumbosacral spines, and both arms and legs. (Tr. 663-4; Tr. 748-49). The third examination by Dr. Saul indicated that while plaintiff was not doing very well with pain after her surgery, "her examination [was] within normal limits." (Tr. 746). Although the ALJ failed to specify the exact weight given to Dr. Saul's other assessments and only explained that "little weight is given to the March 2004 assessment of Thomas Saul, M.D.," such an error is harmless because as described above, Dr. Saul's final assessment of record in March 2004 concluded that plaintiff's

13

condition did not prove to be disabling. (Tr. 647). Likewise, for the reasons discussed above in connection with plaintiff's first assignment of error, the ALJ thoroughly discussed his finding that Dr. Hutson's opinion was entitled to "little weight."

Finally, the ALJ did not err in failing to adopt the RFC as determined by Dr. Hutson. The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. § 404.1527(e)(2).[6] "Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner." *Profitt v. Comm'r. of Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138, at *6 (S.D. Ohio Dec. 12, 2014) (Report and Recommendation), *adopted*, No. 1:13-cv-679, 2015 WL 248052 (S.D. Ohio Jan. 20, 2015) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). *See also Moore v. Astrue*, No. CIV.A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)). *See also Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (Court of Appeals stated that the RFC determination, which is part of the disability evaluation, is expressly reserved for the Commissioner). An ALJ is not required to adopt precise limitations offered by a single medical source in assessing a claimant's

---

[6] Effective March 27, 2017, the regulation was amended and similarly provides that ALJs "are responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability. In doing so, [the ALJ] review[s] all of the medical findings and other evidence that support a medical source's statement that [a claimant] is disabled." 20 C.F.R. § 404.1527(d)(1).

RFC. *Id.* (affirming District Court decision that upheld an ALJ finding of RFC for light work with restrictions, despite absence of a medical source opinion assessing plaintiff as capable of light work).

Here, the ALJ adequately determined plaintiff's RFC based on the objective medical evidence. The ALJ did not "substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (citations omitted); *Hammock v. Comm'r of Soc. Sec.*, No. 1:12-cv-250, 2013 WL 1721943, at *8 (S.D. Ohio Apr. 22, 2013) (Report and Recommendation), *adopted,* 2013 WL 4080714 (S.D. Ohio Aug. 13, 2013). Rather, as explained above, the ALJ thoroughly reviewed the medical records and the medical opinions from the physicians of record. In addition, the ALJ had no reason to adopt Dr. Hutson's RFC after determining that his testimony was not based on the objective medical evidence of record and thus was entitled to "little weight." Accordingly, plaintiff's second assignment of error should be overruled.

### 3. Plaintiff has failed to establish any error with the ALJ's credibility finding.

Plaintiff alleges that the ALJ erred in evaluating her pain, credibility, and subjective complaints under 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. (Doc. 6 at 10). Plaintiff argues that the ALJ failed to discuss the reasons why he considered her testimony to be "partially credible." (*Id.*). Plaintiff argues that objective medical findings exist to support plaintiff's subjective complaints, such as the "the scar tissue noted by Dr. Hutson and the findings on exams." (*Id.*). Plaintiff further contends that her own credibility is further supported by the fact that she began working again in 2008 but could not continue and also by the steps that she took to relieve her pain, such as undergoing laminectomy surgery in 2003, attending physical

therapy, receiving back injections, undergoing a pain pump insertion in 2014, and taking narcotic medications. (*Id.* at 11-12). Plaintiff also contends that the ALJ erred in failing to give the testimony of her husband significant weight because he provided information on her daily activities and significant limitations following her 2003 surgery. (*Id.* at 11).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id*.

In addition, Title 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996)[7] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of

---

[7] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage,

effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5)

treatment, other than medication, received for relief of pain or other symptoms; (6) any measures

used to relieve pain or other symptoms; and (7) other factors concerning functional limitations

and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), SSR 96-7p.

Upon review of the ALJ's complete credibility determination, the Court finds the ALJ's

credibility finding is substantially supported by the evidence of record and is entitled to

deference. The ALJ concluded that plaintiff's testimony was partially credible, but not fully

credible, because "[t]he objective medical evidence [did] not support allegations of disabling

impairments before the date last insured of December 31, 2005." (Tr. 21).

Here, plaintiff has not shown that the ALJ committed any error in connection with the

assessment of her credibility. Although the Commissioner concedes "[i]t is true that the ALJ

devoted most of his subjective-complaints analysis to the objective findings of record and he

certainly could have discussed the other factors he considered in greater detail," the Court finds

that, contrary to plaintiff's assertion, the ALJ adequately considered plaintiff's subjective

statements as to her symptoms and functional limitations (Tr. 20-21), along with her daily

activities, the objective medical evidence, and the medical opinions of record. (Tr. 21-24). *See*

*Newman v. Colvin*, No. 1:15-cv-639, 2017 WL 685685, at *7 (S.D. Ohio Feb. 1, 2017) (holding

that ALJ properly considered the requisite factors in making his credibility determination

because he considered plaintiff's subjective statements, objective medical evidence, plaintiff's

activities of daily living, and the record medical opinions), *report and recommendation adopted*,

*Newman v. Comm'r of Soc. Sec.*, 2017 WL 680632 (S.D. Ohio Feb. 21, 2017); *Cross v. Comm'r*

*of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("[t]he ALJ need not analyze all seven

factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

Specifically, the ALJ considered plaintiff's daily activities, noting that while she spent much of her time lying down, she could complete light chores such as small loads of dishes and laundry. (Tr. 20). The ALJ considered plaintiff's testimony that she had pain in her lower back that radiated in both legs and had a pain level that could reach 7-8 on a scale of 0-10. (*Id.*). The ALJ also considered plaintiff's medications and treatment, which included surgery and physical therapy. (*Id.*). As described above, the ALJ conducted a thorough review of the medical evidence of record and in taking plaintiff's testimony into consideration, reasonably concluded that there was no objective medical evidence to support her testimony for the relevant period. (Tr. 21-24).

Plaintiff also contends that the ALJ erred in assessing her credibility because there is objective evidence to support plaintiff's limitations. This includes evidence of scar tissue explained by Dr. Hutson in the 2010 hearing and "the findings on exams." (Doc. 6 at 10). However, even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Though there is some medical evidence supporting plaintiff's testimony, the ALJ's credibility determination is substantially supported and should not be disturbed by this Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it. *See Buxton*, 246 F.3d at 772.

Finally, the ALJ did not err in failing to give "significant" weight to the testimony of plaintiff's husband, James Blair, who testified about plaintiff's limitations in her daily activities. (Tr. 1308-1315). Mr. Blair, as plaintiff's husband, is considered an "other nonmedical source" under the Social Security regulations. *See* 20 C.F.R. § 404.1513(d)(4). This regulation provides that "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, [which the ALJ is required to consider, the ALJ] *may also* use evidence from other sources to show the severity" of a claimant's impairments. 20 C.F.R. § 404.1513(d) (emphasis added).[8] The assessment of the credibility of lay witnesses, as well as the weight to attribute to their testimony, is peculiarly within the judgment of the ALJ. The testimony of a lay witness "must be given 'perceptible weight' [only] where it is supported by medical evidence." *Allison v. SSA*, No. 96–3261, 1997 WL 103369, at *3 (6th Cir. 1997) (citing *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony where . . . it is fully supported by the reports of the treating physicians."). *See also Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Here, the ALJ acknowledged and considered Mr. Blair's testimony. In addition, the ALJ was not required to give any further consideration or "weight" to Mr. Blair's testimony as he found it to be unsupported by the objective medical evidence of record from the relevant period of July 21, 2003 through December 31, 2005. Accordingly, plaintiff's third assignment of error should be overruled.

**4. The ALJ did not err by posing an improper hypothetical question to the VE.**

Plaintiff contends, without citing legal authority, that the ALJ erred by posing improper hypothetical questions to the vocational expert. (Doc. 6 at 12) (citing Tr. 1319-1322). Plaintiff

---

[8] Effective March 27, 2017, the regulations were amended and provide, "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records." 20 C.F.R. § 404.1513(a)(4).

argues that the questions were improper because "they left out the testimony of Dr. Hutson about sitting for one hour and standing for five minutes, left out the supported side-effects of the strong medications (the cognitive problems), left out the days of work she would miss and the extra breaks required with lying down, and left out her need to walk around due to the pain." (*Id.* at 12-13).

ALJ Boylan limited plaintiff to sedentary levels of exertion with additional restrictions as follows: "limited to frequent climbing of ramps and stairs, can never climb ladders, ropes and scaffolds, is limited to occasional stooping, kneeling, crouching, and crawling." (Tr. 1319). ALJ Boylan also restricted plaintiff to "avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration and workplace hazards such as dangerous machinery and unprotected heights." (*Id.*). Because the ALJ appropriately weighed Dr. Hutson's testimony and thoroughly reviewed the objective medical evidence as described above, the ALJ's hypothetical question to the VE was sufficient to convey plaintiff's limitations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (vocational expert testimony "must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects."); *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) (in formulating a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations the ALJ accepts as credible). Accordingly, plaintiff's fourth assignment of error should be overruled.

**IV. Conclusion**

In sum, substantial evidence supports the ALJ's RFC determination. Substantial evidence also supports the weight given to Dr. Hutson, the medical expert. Further, the ALJ did not err in assessing plaintiff's credibility nor that of her husband. Last, the ALJ did not err by posing an improper hypothetical question to the vocational expert. Accordingly, plaintiff's

assignments of error should be overruled.

      **IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be

**AFFIRMED** and this case is closed on the docket of the Court.

Date: ___11/8/17___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LORI J. BLAIR,
    Plaintiff,

                    Case No. 1:16-cv-1064

                    Dlott, J.

                    Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).